OPINION OF THE COURT
David D. Egan, J.
Indictment No. 787, filed November 23, 1994, accuses defendant, Raymond Hill, of two counts of driving while intoxicated. *149 On January 25, 1995, defendant filed a motion to suppress the use of all evidence of intoxication, claiming that the evidence was obtained from him after he was stopped at a traffic checkpoint that did not meet constitutional standards. The People submitted an answering affirmation and a memorandum of law in opposition to defendant’s motion.
On September 3, 1994, the Gates Police Department established a traffic checkpoint on Lyell Avenue near the 390 exit ramp. Police stopped every vehicle travelling westbound on Lyell Avenue and briefly examined the driver for signs of intoxication. Defendant was stopped at the checkpoint at about 1:10 a.m. and subsequently arrested for driving while intoxicated. The checkpoint at issue was established pursuant to a written general order of the Gates Police Department, dated March 1, 1992. No further written directives were issued specifically authorizing the September 3, 1994 checkpoint.
In People v Scott (63 NY2d 518), the Court of Appeals held that a traffic checkpoint established pursuant to a written directive of a police agency for the purpose of detecting and deterring driving while intoxicated is constitutionally permissible. Defendant argues that a general written directive of the type issued in this case does not comply with Scott. Defendant, citing People v Betances (Rochester City Ct, Monroe County, Jan. 30, 1995, Pfeiffer, J.), interprets Scott as requiring a police department to issue an additional written directive specifically pertaining to each checkpoint operation conducted pursuant to the general written directive. Thus, the narrow question presented is whether the general order issued March 1, 1992 by the Gates Police Department is a satisfactory written directive under Scott, or whether the department was required to issue a further written directive specifically authorizing the September 3, 1994 checkpoint.
Although the Court of Appeals has never spoken directly to this issue, a review of the record on appeal in Scott (supra) compels the conclusion that a specific written directive for each checkpoint is not necessary. In Scott, the Genesee County Sheriff issued a memorandum, dated March 5, 1982, setting forth guidelines and procedures for establishing and operating a motor vehicle checkpoint. The memorandum included procedures designed to minimize the safety risk to the public and the intercepted motorist. The memorandum also included procedures designed to guarantee the uniform and nondiscriminatory operation of the checkpoint by minimizing officer discretion. Officers were required to either stop all vehicles or employ *150 a system of stopping every second, third, or fourth vehicle; officers did not have discretion to follow any other method of selecting vehicles to be stopped. The first checkpoint procedure pursuant to the memorandum was conducted in March 1982. Six or seven checkpoints were conducted between March 1982 and September 24, 1982, the date the defendant in that case was stopped at a checkpoint and arrested for driving while intoxicated. The March 3, 1982 memorandum was the only written document issued by the Genesee County Sheriff’s Department; the Department did not issue a written directive specifically authorizing the September 24, 1982 checkpoint. Despite the absence of a further written directive, the court held that the September 24, 1982 stop was constitutional.
The procedures contained in the general order issued by the Gates Police Department, on March 1, 1992, are similar to the Genesee County procedures approved by the Court of Appeals in Scott (supra). The stated purpose of the Gates general order is to establish a uniform policy for the initiation and establishment of traffic checkpoints and roadblocks. The general order requires that traffic checkpoints be authorized by a command officer of the rank of Lieutenant or above. The checkpoints must be properly planned, supervised, and staffed and a command officer must be present at all times. The order further requires that vehicles be stopped in a uniform and nondiscriminatory fashion; a pattern must be established and strictly adhered to. The order promotes public safety by setting forth nine criteria to be used in planning for the establishment of traffic checkpoints.
This court concludes that the general order issued by the Gates Police Department embodies sufficient neutral limitations on the conduct of individual officers to satisfy constitutional requirements; the Gates Police Department was not required to issue a further written directive before establishing a checkpoint on September 3, 1994.
Additional support for this court’s conclusion may be found in lower court decisions which have upheld checkpoints established and operated pursuant to nondiscriminatory and nonarbitrary unwritten guidelines. In People v Collura (160 Misc 2d 831), the court rejected defendant’s argument that a checkpoint did not meet constitutional standards because it was not established and operated pursuant to a written plan, holding "[T]he Scott decision (supra) indicates that the People must establish that the checkpoint was operated in a uniform, nonarbitrary manner * * * Although a written plan would be *151 one way to meet this uniformity requirement, it is not the only way” (at 833). Courts in several other States have upheld checkpoints established pursuant to unwritten guidelines. (See, State v Leighton, 551 A2d 116 [Me 1988]; State v Garcia, 500 NE2d 158 [Ind 1986]; Lowe v Commonwealth, 230 Va 346, 337 SE2d 273 [1985]; State v Deskins, 234 Kan 529, 673 P2d 1174 [1983].)
In view of the fact that a checkpoint established and operated without any written guidelines may pass constitutional muster, defendant’s contention that he is entitled to suppression because the police failed to issue a second, more specific, written procedure in this case is unpersuasive.
For the reasons stated above, the court is satisfied that the checkpoint was established in a manner that complied with constitutional requirements. Nevertheless, defendant is entitled to a hearing to determine whether the checkpoint at issue was operated in a manner consistent with the March 1, 1992 general order and whether police had sufficient probable cause to arrest defendant for driving while intoxicated.